Shannon Liss-Riordan, Plaintiff's Appellant May I reserve three minutes, please, for rebuttal? Yes. Thank you. Your Honors, the District Court below, relying on a 33-year-old precedent, Donovan v. Burger v. King, which had been decided under earlier regulations under the Department of Labor, not the regulations that are in effect today, essentially held that as a matter of law, a fast food manager, regardless of factual disputes in the record, is always going to have as his primary duty management, simply because it's theoretically possible for a managing at the same time as performing non-exempt duties. In making this conclusion, the District Court glossed over many factual disputes in the record and significantly failed to perform the analysis under the current regulations required by the Department of Labor. In particular, unlike the magistrate judge, who found there to be factual issues here requiring a trial, Judge Saylor did not even address the four considerations that the Department of Labor has now said should go into the analysis of whether an employee's primary duty is management. And also, he glossed over the disputes of fact in the record regarding the other requirement that is disputed here, that defendant has the burden of proving, in addition to proving that the employee's primary duty is management, the defendant also has the burden of proving that the employee's had authority to hire a fire or their recommendations be given particular weight. He glossed over the dispute that we have here, and it's the defendant's burden to prove that both of those factors are met. So in particular, looking first at the recommendations being given particular weight, Judge Saylor simply looked at the fact that the plaintiff agreed that when he strongly believed someone should be fired, that that person was fired. Now that doesn't actually necessarily mean that his recommendations were given strong weight, it just might have been that in such a circumstance the district manager agreed with him. He also testified that other times he recommended that employees be terminated and his recommendations were not adhered to, creating a factual issue regarding how much weight his recommendations were given. So for one thing, on summary judgment, because the defendant has not proved there is no dispute of record on that factor, summary judgment should not have been granted against the plaintiffs. Now looking at the primary duty factors, which Judge Saylor did not even analyze in his decision, under the current regulations, 29 CFR 541.700, the court is supposed to look at these four factors, all of which have disputes of fact here. The relative importance of the exempt duties compared to other duties, we have ample evidence in the record here that what was really important to the employer here was the ability of these managers to work however many hours were needed to fill in for crew members who weren't there to do the exact same work that the crew members were doing with a minimal amount of time doing management duties. And the second factor is the amount of time spent on exempt work. This is on this primary duty question. You describe in your brief, I believe affidavits from your clients to the effect that 90 percent of their time is spent on non-exempt work, is that correct? Yes. Okay. Now the Judge Saylor may not address that figure precisely. He cites the Burger King case for the proposition that I think that whatever that number may be, it remains possible for one to be concurrently still in charge while performing this kind of non-exempt work. And the regulations acknowledge the possibility of this kind of concurrent phenomenon where you're doing this non-exempt work, but on the scene you're still the boss, you're still in charge, you still have those oversight responsibilities. Now what's wrong with that reading of Burger King? Yes. Well it is correct. Both Burger King says and the current regulations acknowledge that it is possible to be performing this management function while performing non-exempt work. That does not mean that is always the case. And a court needs to look at whether there are disputed facts in the record. So here the testimony of Mr. Marzook was as follows, and we've cited it several times in our briefing. He said that he did not have enough time to be a manager because of all the time he had to spend on the floor. When asked, well, weren't you supervising employees while you were on the floor? He said he tried. Now a reasonable jury could infer from this evidence that he did not feel he was able to do management concurrently with performing these non-exempt duties while he was focusing on serving customers coffee and bringing up the register. He didn't feel that he was able to be managing the staff there. So we have a disputed fact here, although it's theoretically possible and the jury could come back and decide, well, he really was managing while he was on the floor. His testimony was he tried to, but he wasn't really able to manage because he had to spend so much of his time doing this non-exempt work from which a reasonable jury could infer he didn't feel he was really able to manage while he was doing bringing up the sales, pouring the coffee. But it still was his responsibility. That's not challenged, is it? Doesn't it just mean that he found it taxing? Well, it could be that he found it taxing, it could be that he wasn't able to actually do it. And now other courts, other courts of appeal, other district courts have looked at this, for instance, in the Morgan v. Family Dollar case decided from the 11th Circuit. Similar arguments were made and the court said that this was appropriate for a jury to figure out. And there a jury figured out that these managers were not really able to manage while they were spending so much of their time, here less time than the plaintiffs in this case, doing the same type of work as the hourly non-exempt employees. So would the issue actually turn on how much take a day, a week, how much time does it actually spend doing this non-exempt work and how much time is doing the exempt work? Because that's not what the Burger King case seems to say. It seems to suggest, I believe what Judge Howard was suggesting was that the fact that even though you may not be doing the exempt work, the fact that you're still responsible for doing it, you still have a duty to do it, means that even while you're doing that non-exempt work, you're still in charge. Well, that is, again, something that a jury might conclude, but a jury might not conclude that the manager really was able to do that. And I want to emphasize again, Burger King was decided 33 years ago prior to the current regulations. The current regulations have these four factors, these four primary duty factors to look at which Judge Saylor did not specifically analyze. And in addition to these four factors, there's also the authority to hire, fire, or recommendations being given particular weight factor, which as I noted before, there's disputed evidence on. The disputed evidence on that point alone, under the current regulations, requires that summary judgment can't be entered, that there is a factual dispute for a jury. Because remember, it is the defendant's burden to prove an exemption from overtime. What is substantively different about the regulations now and what they were 33 years ago? Is it just a little more specific guidance as to how you analyze this issue, what is a bona fide executive? Well, it's a little complicated what the differences are, but essentially prior to 2004, there was a long test and a short test. And the First Circuit in the Burger King case determined that the managers that issued there were not exempt under the long test, although not under the short test. The short test had only one factor, and that was primary duty. And in that case, the court determined that one could be managing while one is doing hourly work. Again, trying to compare it to the current regulations, there wasn't this additional factor that, again, the defendant has the burden to prove that there's no material disputes in the record regarding whether or not the manager's recommendations are given particular weight. Now on the issue about the timing, one of the four primary duty factors that the court is to look at now, under the current factors, is the amount of time spent performing the exempt and the non-exempt work. So here, where we have evidence in the record that 90% of the manager's time was spent on non-exempt work, doing the same thing that the hourly employees were doing, the prior short test, long test, well, the prior long test looked at, it did consider percentages, 40%, 50%. The current regulations have done away with these percentages of time as an absolute basis for determining the distinction between exempt and non-exempt. However, the question that was looked at then was whether an employee needed to be doing at least 50% exempt work in order to be considered exempt. So although we don't have that factor now, you didn't have to be doing 50% necessarily to be considered exempt, this is a far cry from that. Here we have evidence that the managers were performing 90% of their time doing the same hourly work as the crew members. And remember that a lot of their time was also just doing the work. There was testimony that Mr. Marzook would work during the overnight shift when there wasn't anyone else there, so there was no one else there for him even to be managing because he was filling in all of these hours for other crew members when they didn't show up for their shift or they couldn't show up for their shift. And so he's just there useful to the employer as straight-time labor to fill in for these overnight shifts or long shifts just whenever they need extra labor, rather than hiring another employer or rather than paying overtime to him or someone else. So again, I want to emphasize in the pre-2004 regulations, even looking at the short test, there weren't these four factors that we now have. There was simply primary duty and in this 33-year-old case, the court surmised, well, you could be doing them at the same time. Here we have evidence in the record from which a reasonable jury could determine that the plaintiffs didn't feel that they could do them at the same time, but in addition, we have factors on each of the four. The non-exempt employees earn $8 an hour, is that correct? Yes. Plus tips. If you translate the hours that your clients work into, I know they're paid different salaries, but if you translate their weekly salary into an hourly wage, how closely does it approximate that $8 and how much does that matter? Well, that is one of the four factors, the relationship between under the primary duty test in the current regulation, the relationship between the employee's salary and wages paid to the non-exempt salaries. We've done the math in our brief that Ms. Chantres was making actually a little less than the hourly workers and Mr. Marzouk was making not that much more. And that is because if Mr. Marzouk and Ms. Chantres testified were working well more than 40 hours, there's testimony that they were typically working, or he was at least working 60 hours or more, the non-exempt employees were capped out at 40 hours. So if you look at their actual hourly rates and also consider the fact that the non-exempt employees got tips, which conservatively speaking would be a couple bucks an hour, and that's conservative, that would bring the non-exempt employees to roughly $10 an hour. Ms. Chantres was just a little bit more than that, about $11. Mr. Marzouk was in the $13s or so. And another way of looking at it is if you consider their, what the non-exempt employees would have been making had they been working 60 or 70 hours a week. We have the math in our brief. It's actually quite close. It's a little bit more than Ms. Chantres and pretty close to what Mr. Marzouk was making. Thank you. Good morning, Your Honors, and may it please the Court. On behalf of the appellees, Burger King is still very good law. The issue remains whether an employee has primary duty or has management as his or her primary duty. Now there's the additional issue of whether they also were responsible for hiring and their weight. Burger King addresses that primary duty issue and it hasn't changed. It's been continuously cited here in the District of Massachusetts certainly and in other circuits around the country. The issues here, because- Counsel, if somebody is, and I ask this because there appears to be a factual dispute, there is an assertion in the record by one of the, maybe both, that we spend 90% of our time doing this non-exempt work. If that were borne out by the evidence, how could one be regarded as a bona fide executive with management responsibility if they're spending 90% of their time doing exactly the same work that the non-exempt employees are doing? That doesn't seem to be a rational scenario at all. Well, first of all, I'd say the 90% figure is not supported by the record. We're on summary judgment. I mean, there's an affidavit to that effect. There's a claim that that's what the situation is. Even if we were to concede 90% of the time was spent doing non-managerial work, there's a significant difference between Mr. Marzook and the other sales associates in his store. He is the manager. He's the person in charge. He's the one trusted by the company. We know all of that. The question is, if he's doing 90% work that a normal employee would do, at the most it seems to me, if we start with that assumption, which we have to for the sake of the summary judgment record, then the most you could argue, if that is borne out, is that there was some significant overlap during that 90% period in which he was also managing. But that is a factual dispute. I don't think that's a factual dispute at all. The key here is what Judge Lippe has said about Burger King and the DOL regulations, that one can concurrently perform critical work as a manager while also performing non-managerial functions. Maybe one isn't doing both at the same time. As I understand it, the Department of Labor regs certainly leave that possibility not only open, but suggest that there is such a possibility. There really is nothing in this record to support that Mr. Marzook wasn't concurrently doing both. When he was on the floor serving customers or on a cash register, this is a very small Dunkin' Donuts store. He is at the same time supervising six or seven sales associates, ensuring that customers are being served properly. If there's a problem, the problem is being addressed consistently with company policies. I understand you're making an argument about possibility, and I will assume that you are correct that that is a possibility. But Mr. Marzook also testified or swore that he couldn't do both at the same time. So it seems to me the only fair way to read his 90 percent claim is that it was 90 percent doing regular work, not managerial work. Whether that is going to be borne out in fact, I don't know. But why isn't it a triable issue? Because he didn't say he couldn't. He answered the question that, A, it was his duty, and that's the key test. The company imposed that duty on him. That's undisputed as part of his job profile. And second, he said that he tried to fulfill that duty. He didn't say he could not. He said he tried to fulfill the duty. There's no dispute about that. Counsel, it seems to me you're describing a scheme that invites the very kind of evasion that the regulations are intended to avoid in this sense. You give somebody a title, which not only puts them in charge, you define what their duties are, and then in practice you make them spend virtually all their time doing this type of non-exempt work, and yet you say, well, we know that you're doing all that work, but it is your duty. It is your responsibility as the manager to do all these other things, and so since it remains your responsibility concurrently while you're doing all this other non-exempt work, you're still in charge. That does not seem like a rational or fair scheme. Here are just some of the things, and I would invite and encourage the court to look closely at pages 86 to 88 of the record appendix. This is from Mr. Marzook's deposition. And on those two pages, or three pages, he says, among his duties, he trained employees. He coached them. He corrected them if they made mistakes. He encouraged them if they performed well. Sometimes he disciplined them. He made recommendations to terminate, and the district manager, Aaron Darmody, followed those recommendations in each instance. I'll get back to the point that my sister mentioned where they collectively sometimes decided not to terminate, but it wasn't that Mr. Marzook was being overruled. He assisted in hiring. He directed the sales associates. He functioned as a leader. He ensured that sales associates served customers appropriately, giving fast and friendly service. He directed them to clean where appropriate. He tried to ensure that company policies were carried out. So he is the person in a very stressful, fast-paced commuting environment where there's a crush of people in the store who want to get in and out. He's making sure that everybody's attending to the tasks that need to be attended to, and he's the captain of that store during that key morning commute time. He's doing a lot. These are all management duties. These are duties that the company needs somebody to do, someone with experience who's responsible, because the sales associates turn over frequently. So to have somebody who's long-term, who's compensated for being long-term, for being that manager, and for staying with the company, that's important, and that is why the statute exempts these people from receiving overtime. Part of the benefits that he receives are more favorable compensation. So he's paid, I think it was, let me get the exact correct figure here, $825 per week. That's $42,900 per year. First of all, there's nothing in the record to support that he worked a 60-hour week. He testified he did not keep record of his hours, and Ms. Chantres didn't testify. She died. The only evidence of her hours are what the company expected her to work, which was 48 hours a week. So their math is off, because they're applying an unsupported speculative number of 60 hours per week to reduce the overall compensation to one that is still much higher than... Not to maybe... He says I worked 60 hours. You can say it's unsupported and speculative, and that's a good argument at a trial, but I don't know why, for some reductive purposes, he cannot say this is what I did, this is how long I worked. Even if we were to concede that he worked 60 hours a week, the math is as follows. His hourly wage at that rate would be $1,375 an hour. That's 71.9% more than the $8 per hour that the sales associate receives. Chantres, at 48 hours a week, is 56.25% more than the sales associate, and this doesn't even include what they each received in terms of bonuses and participation in the health care plan. So they each got health care from this company, which, as we all know, is a huge financial benefit. A premium of more than 30% is sufficient as a matter of law to satisfy the requirement of this relative compensation factor. They received well more than 30% in compensation than the sales associates, even if we assume that they were working 60 hours a week. But we don't assume tip income. We don't, because there's no evidence of what the tip income was. There's none. So, on those factors, those are just some of the factors that are part of the analysis. I think I've addressed the hiring and firing. Again, if you look at pages 86 to 87 of the Record Appendix, he testifies about how he is, in fact, involved in disciplining. He's involved in termination decisions, and he does testify that in every instance his recommendation to terminate was followed. There is that one piece of evidence where he says sometimes he would then confer with the district manager, and jointly they would decide, look, we can work with this employee, and they decided it's better to work with that employee and try to save the situation rather than simply terminate, and they collectively decided to do that. Counsel, may I ask you, this maybe returns to an earlier question, I'm looking at the slides, it's on page 10, a whole series of factual disputes. You don't have to respond to these particularly, but a whole series of factual disputes. It appears, and Judge Saylor doesn't really address those specifically, he seems to say that none of those factual, this is on the primary duty issue, that none of those factual disputes matter because it remains a fact that the plaintiffs were all in, that the plaintiffs were all in, and they could concurrently be doing both at the same time, and that's somewhat troubling because it seems to reduce to the proposition that title is what really controls the outcome here. A list of duties is what controls the outcome here, and all these disputes about what they were or were not actually doing on the job, that just doesn't matter. And that seems an odd way to analyze a statute which has this remedial purpose and where these exemptions are supposed to be construed narrowly. It seems somewhat inconsistent with those propositions. My memory is that in Judge Saylor's decision, he did analyze the record, he did address the fact that the record supported that these plaintiffs were concurrently functioning as managers while they were also doing non-managerial work, that they had the important task of enforcing company policies, et cetera. Some of the things that I've gone through and cited to in the record, Judge Saylor also cites two, in reaching the final decision. So he may not go through each of the four factors, which, by the way, are simply advisory. They're not required to be addressed by a judge, but they're suggestions for ways to look at the issue in order to determine whether this person has management as is her primary duty. But even if you go through those four factors, you reach the same conclusion. The first factor is the time issue, but time here is not really a relevant factor in this context because of the difficulty of severing here the managerial role from the non-managerial in a fast food restaurant, where that key manager who's responsible for the store is doing these multiple managerial tasks and functions while also serving customers. But aren't you, in effect, by discounting that factor saying you've got to assume that in fact he's doing both all the time? Well, I'm not saying to assume it. I think the record supports it. The company imposed that duty. If the court looks at the position profile, it's very clear that the supervising of employees at all times, ensuring that company policies are implemented while ensuring fast and friendly service, these are the sort of most important roles that the manager plays. And so I'm not assuming, I'm not discounting, but it's in the record, it's undisputed. And I think as Judge Howard pointed out, the question is not whether this was difficult to achieve for Mr. Marzouk, it's whether the company expected him to do it, and they did. And in fact, he served for a long time successfully at this company without ever being written up for having failed to accomplish these managerial tasks. He did so well. Thank you. Defense counsel just recited a number of things that Mr. Marzouk did and testified that he did as part of his job, but as noted by this court, he testified that if you look at page 169 of the record as one example, he says, as a manager, I don't have time to actually be the manager as required to be a manager. I'm always on the floor 90 percent of my time serving customers, cleaning, cleaning the outside, doing the landscaping, cleaning the papers out of the bushes, cleaning the bathroom, serving customers, covering shifts. So the jury can find that when he was talking about that 90 percent time that he was spending doing these non-managerial tasks, the tasks that my brother just listed that he did that were managerial were taking less, less than 90 percent of his time. Significantly, I think there was some discussion before about the significance of the pre-2004 regs and the current regs. I think significant difference is that under the old short test, there was just this factor that the court looked at in the Burger King case of what was the primary duty. The fact that the Department of Labor has now spelled out these more detailed non-exclusive list of factors to look at, which again Judge Taylor did not analyze, shows that this is to be a fact, a very fact-intensive inquiry. I think the Department of Labor has recognized how fact-intensive it is and just quite frankly in the Burger King case, there wasn't that type of fact-intensive inquiry. There was just this assumption that you could be doing both at the same time where Mr. Marzook's testimony could be taken by a jury to mean he wasn't able to do them both at the same time. And remember that this is an environment where he, like the other workers, are serving hot coffee to customers often in a frequently crunched environment. So he's handing hot coffee to customers, having to focus on the customers, and the jury can infer from this that while he was focusing on the customers and doing this work behind the counter, he wasn't at the same time looking around, walking around, and giving supervision and management to the other employees. It was during the 10% of his time that he admitted he may have been doing management employees that that would have come into play. Can I ask whether there's a factual dispute over whether the non-exempt employees had any of the following and whether he had all of the following, stable schedule, stable salary, vacation time, bonuses, eligibility for 401K? Is there any dispute about any of those distinctions? I don't think that is in the record. I don't know if there's really any particular dispute that he may have had some of those benefits that the non-exempt workers didn't have. But we've also cited cases in our briefing that those aren't dispositive. You look at the hourly rate. And again, considering the number of hours he was working compared to the non-exempt workers. I mean, he got a $300 bonus every now and then. You're not saying that that automatically trumps all of those other things when you say that they're not dispositive. Right. Or are you? Well, I'm saying that the cases we've cited say that you primarily, you look at the hourly rate. The fact that there's maybe other bonuses is not dispositive. Here we have such a close match between what he was making and what the hourly workers were making. If you take into account what the hourly workers would have gotten as overtime, had they been working more than 40 hours a week. You take into account the fact that the hourly workers were obviously getting some tips, although it might not be in the record exactly how much it is. The court can take notice that there would be something. And in the First Circuit decision of Natta Morris versus Starbucks, it was agreed to $2 an hour. Yes, just on the termination issue, if I would just direct the court to on pages 183 and 184 of the record. On 183, he's asked, so every time you recommended that an employee be terminated, the employee was terminated, right? And he said, not all the time. On page 184, he's asked, every time you strongly felt an employee should be terminated, the employee was terminated, correct? He said, yeah, correct. Again, that doesn't prove that it was because the district manager was following his advice. He might have just agreed because those were particularly egregious circumstances and come to that same conclusion on his own. Thank you. Thank you both.